CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 0 2007

JOHN F. CORCORAN, CLERK
BY: /s/
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ORBIS, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:06CV00372 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| OBJECTWIN TECHNOLOGY, INC., ) | By: Hon. Glen E. Conrad |
| ) | United States District Judge |
| Defendant. ) | |

This breach of contract case is before the court on the defendant's motion to compel arbitration and stay litigation. A hearing on the motion took place on September 14, 2007. The issue before the court is whether the parties reached an agreement to arbitrate the dispute alleged in this matter. For the reasons set forth below, the court finds that there is an enforceable agreement to arbitrate, and therefore, the defendant's motion shall be granted.

## BACKGROUND

Orbis, Inc. ("Orbis") is a Virginia corporation engaged in the business of providing computer consulting services for Geographic Information System (GIS) mapping systems with an emphasis on clients in government and the forestry industry. ObjectWin Technology, Inc. ("ObjectWin") is a Texas corporation engaged in the business of computer consulting, more specifically providing consultants to clients with particular information technology needs. In or around May 2005, Orbis contracted with F&W Forestry Services to provide the computer services associated with the delivery of a Timber Inventory Presentation System and a database of properties which contained stands of timber. The agreement specified that the project had to be completed within a defined time frame.

Orbis later became aware that it needed to hire additional computer technicians with particular expertise for the project and to be able to comply with the specified project deadlines. After conducting a search on the internet, Orbis identified Muniswaran Ezhilan ("EZ") as a potential subcontractor for the project. Orbis then engaged the Davenport Group, LLC, an employee screening firm, to evaluate EZ for the project. Based upon the Davenport Group's positive recommendation, Orbis then pursued the hiring of EZ for the project.

After making contact with EZ, Orbis learned that he was actually employed by ObjectWin and that he could be hired only through a contract between Orbis and ObjectWin. Through the exchange of emails and telephone calls, Charles Gallo ("Gallo"), the treasurer of Orbis, and K. Chandra Sekar ("KC"), an account manager for ObjectWin, began negotiating with regard to the terms for EZ's services. The parties also entered into negotiations for the services of a second technical expert for the project and soon identified Selvakumar Ayyadurai ("Selva"), an independent contractor of ObjectWin, as an appropriate individual.

After coming to an agreement with regard to the rate and time frames for EZ's participation on the project, Gallo prepared and emailed an Independent Contractor Agreement (the "EZ Agreement") to KC for his review on January 30, 2006. On January 31, 2006, after coming to terms with regard to Selva's services on the project, Gallo sent a second Independent Contractor Agreement (the "Selva Agreement") to KC for his review. On that same day, Santosh Karande, the president of ObjectWin, signed both agreements and returned them to KC who faxed them back to Gallo at Orbis's corporate office. Gallo's signature on behalf of Orbis is also included on the January 31st EZ and Selva Agreements which have been provided to the court, see Plaintiff's Exhibit 1, although the parties dispute whether Gallo actually faxed the fully-

executed documents back to ObjectWin.

Later that same day, the legal department of ObjectWin expressed its desire to add certain clauses to both the EZ Agreement and the Selva Agreement. Specifically, ObjectWin's legal staff wanted to add a provision prohibiting the solicitation of its employees or contractors and one requiring arbitration in the event of a dispute. ObjectWin also wanted to change the payment terms such that invoices would be faxed for payment every 15 days rather than every 30 days. With regard to the arbitration clause, the language proposed by ObjectWin provides, in relevant part, as follows:

> 6.031 Any dispute or claim arising out of or related to this contract, or the interpretation, making, performance, breach or termination thereof, shall be finally settled by binding arbitration under the AAA Rules. The arbitration will be administered by the AAA in Montgomery County, State of Virginia and will be before a single arbitrator appointed in accordance with the AAA Rules.
>
> . . .

KC sent the suggested arbitration language as an addendum to the agreements to Gallo on January 31, 2006 in an email attachment. KC also faxed the addendum to Gallo that afternoon. Both parties agree that Gallo initially consented to the addition of the new terms.[1] From this point, however, the parties differ as to the ensuing course of events.

Orbis claims that Gallo received only the addendum via fax, although he had asked KC to make the suggested changes within the agreements themselves. Orbis also contends that Gallo then contacted the three shareholders of the corporation to discuss the arbitration and non-hire

---

[1] In his initial email response to KC on January 31, 2006, Gallo stated:
  KC - My answer is yes to both. Please make the necessary changes and additions and forward the same to me in two signed copies. I will then sign them both and return one completed contract to you.
See Defendant's Exhibit 4.

3

clauses and that the shareholders objected to inclusion of the non-hire provisions. During the hearing on this motion, Gallo testified that he did not contact KC or any other individual at ObjectWin to inform them that he had changed his mind with regard to the arbitration and non-hire clauses. He related that he assumed ObjectWin would understand his change of position when he did not return the signed addendum clause. Gallo also claimed that he never received, signed, or returned to ObjectWin the revised versions of the agreements which included the arbitration and non-hire clauses as well as the change to the payment terms.

Instead, Gallo testified that KC called and emailed him late in the day on February 1, 2006 claiming that he had not received the original Selva agreement. Gallo testified that he agreed to sign what he believed were duplicate signature pages to both of the January 31st agreements which KC faxed to him at the Orbis corporate office. Gallo testified that he then faxed the two pages, one for each of the agreements as to EZ and Selva, back to KC that evening.

ObjectWin, on the other hand, alleges that it prepared revised agreements as to both EZ and Selva which included both the arbitration and the non-hire clauses as well as the change to the payment terms. Kal Prasad, the Chief Operations Officer of ObjectWin, testified that he signed these agreements on behalf of ObjectWin on February 1, 2006 and returned the two agreements to KC. During the hearing on this motion, KC testified that he faxed both agreements to Gallo for his signature on February 1, 2006. KC also testified that he received the revised EZ Agreement back first and sent Gallo an email asking for the revised Selva Agreement, which he then received later in the afternoon. Both agreements, according to ObjectWin, were signed by Gallo. KC also denied having sent Gallo only the signature pages to the agreements.

The issue before the court is whether the parties reached an agreement to arbitrate any

4

disputes regarding the contracts at issue in this case. Because ObjectWin has filed a counter-claim with regard to the Selva Agreement, the court's decision with regard to the validity of the arbitration provisions in the agreements will affect that counter-claim as well as Orbis's original claims against ObjectWin.

## STATEMENT OF THE APPLICABLE LAW

The first issue the court must resolve is whether the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), or the provisions of the Virginia Uniform Arbitration Act, Va. Code Ann. § 8.01-581.01 et seq. ("VUAA"), apply in this case. Both sets of agreements in this case provide generally that the agreements shall be governed and construed under the laws of the Commonwealth of Virginia. The arbitration provisions in the second set of agreements, however, do not specifically state what law should apply in the event of arbitration.

With regard to whether a right to arbitrate exists, the Court of Appeals for the Fourth Circuit has held that, although "state law might in some cases be applied in a diversity action to determine whether a right to arbitrate exists, federal law will preempt state law if the contract underlying a potentially arbitrable dispute evidences a transaction involving interstate commerce." Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 978 (4th Cir. 1985). Specifically, in order to determine that the FAA does apply, a court must find (1) that there was an agreement in writing providing for arbitration and (2) that the contract evidences a transaction involving interstate commerce. See Am. Home Assurance Co. v. Vecco Concrete Constr. Co, Inc. of Va., 629 F.2d 961, 963 (4th Cir. 1980). See also, In re Mercury Constr. Corp., 656 F.2d 933, 938 (4th Cir. 1981) (holding that, in a diversity action, if the action meets the jurisdictional requirements, the action should be governed by "the federal substantive law developed in

5

connection with the federal Act and not by state law").

In this case, Orbis, a Virginia corporation with its main office in Blacksburg, Virginia, contracted with ObjectWin, a Texas corporation with its main office in Houston, Texas, for certain of the latter's technical computer consultants to travel to the Orbis facility in North Carolina for the purposes of rendering technical services. Such activities appear to directly involve interstate commerce, and therefore the FAA, rather than the VUAA, applies to the question of whether the documents at issue in this case include an enforceable agreement to arbitrate.

Given that the FAA does apply, a provision in an agreement involving commerce to settle by arbitration a controversy arising out of the agreement shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Furthermore, a court has the power to stay the litigation pending arbitration provided that it is satisfied that the issue involved is "referable to arbitration under such an agreement." 9 U.S.C. § 3. That is, once a court finds that the agreement falls within the scope of the FAA and the issue involved in the suit is referable to arbitration under the agreement, it should "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Rain v. Donning Co., 964 F.2d 1455, 1460-61 (4th Cir. 1992).[2] Therefore, the key question is whether the parties reached an agreement regarding arbitration.

ObjectWin asserts that the agreement between the parties as evidenced by the February 1,

---

[2] The principles are essentially the same under the VUAA. Va Code Section 8.01-581.01 provides that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract." The Virginia Act also provides that a court should stay any action which involves an issue subject to arbitration upon the motion of one of the parties. Va. Code Ann. § 8.01-581.01(A).

6

2006 contracts for the services of EZ and Selva did include an agreement to arbitrate any disputes or claims arising out of those agreements. ObjectWin contends that those contracts were signed by authorized agents for both parties after the parties came to terms with regard to the services of both consultants. The court agrees that the dispute alleged in Orbis's complaint, as well as the claims asserted in ObjectWin's counter-claim, fall within the broad language included in the arbitration provision in the February 1, 2006 agreements. Orbis, however, contends that there was never a meeting of the minds with regard to the provisions included in those agreements, that Gallo never intended to sign those agreements, and that the agreement between the parties is reflected in the January 31, 2006 agreements which do not contain arbitration provisions.

The court is guided in its resolution of this dispute by general principles of contract law. McCarthy v. Azure, 22 F.3d 351, 355-56 (1st Cir. 1994). In order to determine the existence of a binding agreement, or agreements, the court must determine the intention of the parties as objectively manifested. Snyder-Falkinham v. Stockburger, 249 Va. 376, 381 (1995). "It is elementary that mutuality of assent - the meeting of the minds of the parties - is an essential element of all contracts." Phillips v. Mazyck, ___ Va. ___, 643 S.E.2d 172, 175 (2007) (internal citations omitted). There can be no mutual assent, and therefore no contract, "[u]ntil the parties have a distinct intention common to both and without doubt or difference." Id. Therefore, "there must be a complete agreement including acceptance of an offer as well as valuable consideration." Snyder-Falkinham, 249 Va. at 381.

Subject to the statute of frauds, which does not apply in this case, the parties may be bound by a writing signed by only one party so long as it is assented to by the other. Williston, Contracts § 6:43; Galloway Corp. v. S.B. Ballard Constr. Co., 250 Va. 493, 505 (1995) (finding

7

that the absence of a subcontractor's authorized signature on the final construction contract did "not defeat the existence of the contract"); Haufler v. Zotos, 446 Mass. 489 (2006) (holding that "[a] written contract signed by only one party, may be binding and enforceable even without the other party's signature if the other party manifests acceptance").

## DISCUSSION

With regard to the January 31, 2006 agreements, the documents were drafted by Orbis after Gallo and KC had negotiated the terms of service for EZ and Selva. Gallo sent the documents to KC by email, KC printed them out at his place of business, the documents were signed by the president of ObjectWin, and they were faxed back to Gallo. Even without the signature of an agent of Orbis, the court finds that there was a valid agreement between the parties at that time. Both parties had come to a complete agreement with regard to the terms of the engagement. The documents sent by Orbis memorialized the terms of that agreement which were accepted by ObjectWin when its president signed the contracts and returned them to Orbis. There is no question that Karande acted within the scope of his actual authority when he signed the documents on behalf of ObjectWin or that Gallo had the authority to bind Orbis. Therefore, once ObjectWin returned the documents to Orbis, they became binding agreements between the parties.

The negotiations did not stop with the January 31, 2006 agreements, however. After its legal department became concerned about the absence of arbitration and non-hire provisions in those documents, ObjectWin, through KC, contacted Gallo to discuss the addition of such provisions to the agreement between the parties as well as a change to the payment terms. The following email exchange took place between the parties during the afternoon of January 31,

2006:

>Email from KC to Gallo at 2:20 pm:
>
>>Hi Charles,
>>
>>This is further to the contract. Our legal department people have gone through the contract. They wanted the following as an addendum which includes non-hire and Arbitration. Please let us know if this is OK.
>>
>>Also please let us know if the payment terms can be 15 days invoice and 30 days nett [sic].
>
>Email from Gallo to KC at 4:14 pm:
>
>>KC - My answer is yes to both. Please make the necessary changes and additions and forward the same to me in two signed copies. I will then sign them both and return one completed contract to you.
>>
>>Thank you,
>>Charles
>
>Email from KC to Gallo at 6:17 pm:
>
>>Hi Charles,
>>
>>I have faxed the Addendum separately. Please sign the same and fax it back to us along with the contract. Also please let us know on the payment terms.
>
>Email from Gallo to KC at 7:05 pm:
>
>>My apologies KC, I meant that I was okay with everything including the payment terms. I should have said "all" instead of "both" on the previous email.
>>
>>Regards,
>>Charles

See Defendant's Exhibit 5, pp. 10/47 - 11/47. The addendum, which included the arbitration language, was included as an attachment to the first email sent by KC and was also faxed to Gallo at Orbis.

9

Although Gallo, an authorized agent of Orbis, assented to all of the changes proposed by ObjectWin in his communications to KC, he testified that the Orbis shareholders later indicated that they would not approve the addition of the non-hire clause to the agreements. Despite having previously indicated his approval of the proposed changes on two separate occasions, Gallo testified that he intended to communicate his change of posture to ObjectWin by declining to sign and return the addendum. Finally, Gallo testified that his signature dated February 1, 2006 on the revised contracts came about only because he agreed to sign signature pages to what he believed were the original agreements and returned those to KC at ObjectWin by facsimile.

A court may "ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind." Phillips v. Mazyck, ___ Va. ___, 643 S.E.2d 172, 175 (2007). Gallo's written emails to KC at ObjectWin clearly demonstrate his assent to the revised terms of the agreements, including the arbitration clause proposed by ObjectWin. It is not reasonable to interpret his later silence as a communication of the withdrawal of his acceptance of those terms. Gallo admitted that he did not inform anyone at ObjectWin by any means of communication that Orbis no longer consented to the terms of the revised agreements.

The court also finds Gallo's testimony regarding the presence of his signature on the February 1, 2006 agreements less credible than the explanations of ObjectWin. After reviewing those documents, the court notes that the pages of both the EZ Agreement and the Selva Agreement appear to have been faxed in unbroken sequence from Orbis to ObjectWin, including

the three pages preceding the signature page. See Defendant's Exhibits 1 and 2.[3] Furthermore, it would not have been reasonable to assume that any signature pages were for the original agreements after Gallo had indicated his acceptance of the new terms and knew that he had failed to expressly communicate Orbis's change of heart regarding the new contract provisions.

In any event, regardless of whether Gallo did or did not intend to sign the revised agreements, the court finds that the written communications between Gallo and KC, as authorized representatives of their respective companies, were sufficient to establish an enforceable contract with regard to the proposed contract terms, including the arbitration provision. ObjectWin proposed the new terms to which Orbis, through Gallo, agreed. With regard to the arbitration clause particularly, ObjectWin sent Orbis an exact copy of the language to be included in that provision as an addendum to the agreements. That language was then incorporated into the revised agreements. In his email responses to KC, Gallo accepted the new terms by stating "Yes to both" and "I was okay with everything." The parties' agreement regarding the additional and revised terms operated as an addendum to the original agreement. As such, the terms of the arbitration clause are part of a valid agreement between the parties and are enforceable pursuant to the FAA.

The court acknowledges that there was some confusion on both sides surrounding the formation of the agreements between the parties involved in this case. This confusion was caused, in some part, by the urgency felt by both parties in getting these technical assets in place.

---

[3] The court also notes that in response to KC's email sent at 5:07 pm on February 1, 2006 which stated: "We have received the contract signed for Ezhilan. We have not received the signed contract for Selvakumar. Please fax the same.", Gallo responded: "Sorry - It was just a problem with the fax. I am sending it now." See Defendant's Exhibit 4. This exchange appears to indicate that Gallo was sending the entire contract, not simply a signature page.

11

The larger source of the confusion, however, appears to have been the actions and inactions of Gallo. Even accepting all of Gallo's testimony on its face, Gallo, on behalf of Orbis, assented to the addition of the arbitration and non-hire provisions. He then failed to inform ObjectWin that Orbis had decided to withdraw its acceptance of the new terms. In addition, by his own admission, Gallo signed off on two agreements without reviewing their terms in the face of his previous acceptance of the new terms and his silence regarding the alleged withdrawal of that acceptance.

## **CONCLUSION**

The court finds and concludes that there is a valid written agreement to arbitrate in this case as evidenced by the emails and faxes exchanged between the parties. The parties have stipulated, and the court agrees, that the subject matter of this action falls within the scope of the arbitration provision at issue in this case. Therefore, the court will order the parties to proceed to arbitration in accordance with the agreement between the parties and will order that this litigation is stayed pending that arbitration pursuant to 9 U.S.C. § 3.

The Clerk of Court is hereby directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 19th day of September, 2007.

*/s/ Jackson Conrad*

United States District Judge